DIGGS *v.* KANSAS CITY SOUTHERN RAILWAY COMPANY.

4-7319                                    179 S. W. 2d 860

Opinion delivered April 10, 1944.

*C. E. Johnson, Cecil E. Johnson, Jr.,* and *Abe Collins,* for appellant.

*Joseph R. Brown,* for appellee.

GRIFFIN SMITH, Chief Justice. Jewell J. Diggs obtained judgment against Kansas City Southern for $25,000. On appeal conditional affirmance became final when the appellee entered a remittitur for $7,500. Inter-

est of $813.49 accrued, in consequence of which the obligation amounted to $18,313.49 when the Railroad Company tendered payment. It withheld $1,856.90 covering miscellaneous advances from September, 1939, to July 22, 1941.[1]

Except as to a $10 payment made October 19, 1940, and $100 advanced December 2 of the same year, Diggs executed similar receipts—there having been twenty-six separate transactions. The acknowledgment covering twenty-four payments is copied below.[2] In respect to the two payments as to which receipts differed from others, variance consisted of omission of the second paragraph, beginning with "I further agree. . . ."

The Railroad Company's draft for $16,456.59, payable jointly to Diggs and his attorney, was accepted with protest, insistence being that the claim was *res judicata*. Pope's Digest, § 1416, fourth paragraph. On petition of the payer, Circuit Court enjoined claimant from having execution issued for the balance. Abe Collins (Diggs' attorney) intervened. This appeal is from the injunction.

Two questions are presented: (a) Was *res judicata* a tenable plea? (b) Were the receipts ambiguous?

Appellant's original suit was filed August 7, 1941— two years after the injury. Collins' contract of employment (which provided for a contingent fee of fifty percent) was executed July 30, 1941—eight days after the

---

[1] Diggs, whose injuries disabled him, was making monthly payments of $18.04 on a truck. The Railroad Company's claim agent testified that it was agreed $40 per month should be advanced for living expenses, in addition to the truck payments. Diggs' family consisted of a wife and six dependent children.

[2] ". . . I, Jewell J. Diggs, have this day received from the Kansas City Southern Railway Company $58.04 as a loan to me from said company; and it is agreed and understood that said loan is in no wise to be considered as an admission of liability on the part of the Kansas City Southern Railway Company, its agents, servants, employees, or representatives for any injuries claimed by me to have been sustained at or near mile post 438 on or about August 8, 1939, or at any other time or place.

"I further agree that in the event this case is disposed of this amount of $58.04 shall be deducted from the amount which may finally be determined, either by settlement or otherwise, that I am entitled to receive from the Kansas City Southern Railway Company on account of such injuries."

last advance was made. The attorney testified he did not know of his client's financial transactions with the Company.[3]

If it be conceded that the receipts lack word harmony in that they refer to "loans" instead of "advances," still the further condition is that repayment shall be from any sum due Diggs ". . . through settlement or otherwise . . . [on account of the tort]."

The test would seem to be whether (had Diggs failed in his primary suit) the Company could have maintained an action against him for the money. If so, the sums were loans repayable in any event and the Company should have pleaded them. Appellee contends it had no cause of action when Diggs' suit for damages was filed, hence it could not undertake to set-off against the plaintiff the several items advanced—because, in the first place, there was a denial of negligence and consequently the plea of non-liability. Secondly, if it be anticipated that liability would be fixed, the right of set-off arose when judgment was returned.

The statute requires a defense, in answering, to set out ". . . as many grounds of defense, counterclaim, and set-off . . . as he shall have."[4] But, before a counterclaim or set-off can be pleaded it must exist. If the money supplied be adjudged advances chargeable only against what the Company might subsequently concede it was due Diggs, arrived at "by settlement or otherwise," it could not have been pleaded until settlement had been made; or (considering the word "otherwise") until judgment. Not until then was there a principal against which the amounts could be offset.

When draft for $16,456.59 was tendered, the intervener—who prior to that time, but not before suit, knew of the advances—had an opportunity to decline indorsement until the sum due under the contract of employment

[3] Diggs' contract was with Collins alone. Collins, in turn, employed Johnson & Johnson to assist him, they to be compensated by Collins.

[4] Civil Code §§ 116 and 117 were amended by Act 267, approved March 21, 1917. The new enactment substituted "may" for "must." The change is of no importance in the instant case.

had been paid. We do not decide whether, in the circumstances of this case, appellant was entitled to fifty percent of $18,313.49, or only half of $16,456.59. An interplea (or independent action) before the money was distributed would have established rights between attorney and client.

What we do decide is that Diggs was not deceived by language used in the receipts. The mere fact that his unfortunate financial status was such that the Company was morally moved to make advances for his maintenance is an implied answer to the question whether there should be repayment in any event. We do not think this was contemplated. The thought may be pertinent that the Company was not acting from an altruistic standpoint. Certainly its agents, taking a practical view of the matter realized the probability of judgment. It is inferable there was hope that by "nursing" the case along a favorable settlement could be made.

Regardless of motivation, result was that Diggs received substantial benefits he should not be permitted to disavow by placing upon the receipts a construction neither he nor the Company thought of when necessities of the patient (who was in a hospital at DeQueen when the first advance was made) prompted the arrangement.

A final argument is that because the second paragraph of the contract-receipt did not appear in the advances of October 19 and December 2, there is clearly an unconditional obligation to repay. This would be true if it were not so clear that these transactions were a part of the general purpose. Improbability that a different contract was intended affecting these items is so great that the suggestion is without substantial value as an inference.

Affirmed.